Could we call the first case, please? 13-381, Equal District, Jacobs. Would the attorneys presenting the argument please approach and identify yourself for the record? Could you please spell your last names? Good morning, Your Honor. My name is Brian Reyna. I'm with the Office of the State Appellate Defender representing the appellant, Eric Jacobs. And my last name is R-E-I-N-A. Good morning, Your Honors. My name is John Nowak, N-O-W-A-K. I'm Assistant State's Attorney and I'm here on behalf of the people. All right. Good morning, both of you. We will be allotting 15 minutes for each side. Mr. Reyna, would you like to preserve a few minutes for rebuttal? Yes, please, Your Honor. Okay, very good. Whenever you're ready, sir. Your Honors, this is a case in which the state did whatever it wanted to do. The defense essentially had to try the case in handcuffs. And even with all of the bad evidence that came in and the state's improper use of it, it failed to prove that Eric Jacobs knew he was in possession of a stolen motor vehicle. Regarding guilty knowledge, Mr. Jacobs was arrested in possession of James Fox's car and the evidence established that James Fox did not give Eric permission to drive the car. However, there's no evidence indicating that Mr. Jacobs knew the car had been stolen. This case is essentially the same as People v. Gordon, in which this case, excuse me, this court found the state was unable to prove guilty knowledge. In both cases, there was no external damage to the vehicle that would have alerted the defendant that the car had been stolen by somebody else. And there were no signs of unauthorized entry. In this case, Mr. Jacobs used the keys that Brian Lamb, the person who actually stole the car, gave him. And as I said earlier, there were no signs of the steering column being damaged, no wires dangling, nothing about the car that would have alerted Mr. Jacobs. Was there a presumption that he knew the car was stolen because it's stolen and he's in possession? Your Honor, to make a presumption based on possession alone that he knew the car had been stolen, there must be evidence corroborating other evidence of guilty knowledge. And the state in this case is just simply unable to point to any other valid evidence. Does the statute require that, though, Ms. Rana? I thought it just says that if the person is in possession of a vehicle that's been recently stolen, or actually it doesn't matter how, you know, remote time or how recent the theft was, but is there a case that interprets the statute that way? Or is it just an inference that the legislature is imposing? And then there's a – you go ahead. I'm sorry to interrupt there. Your Honor, this was discussed in Gordon. And in Gordon, this Court found that for the inference to be constitutional, it has to be corroborated by other evidence, which makes sense because absent any kind of corroborating evidence, we just have possession of the car. And that's simply not enough. The state has to prove all the elements of the crime. In Gordon, was that – I'm sorry. Was Gordon the case, though, where the person was with someone who another person gave them – or is that a different case, gave them permission at some point? How is the state going to distinguish Gordon? You tell me. I don't think the state can distinguish Gordon. This is essentially saying – I think Justice McBride is right. In that case in Gordon, hadn't the car owner previously lent the car to this individual? And when called to testify at trial, didn't that car owner say, if I had known he had it, I would not have reported it stolen? Well, that's correct, Your Honor. The defendant in that case, like Jacobs in this case, testified, however, that he did not know who owned the car. So in that sense, the cases are exactly the same as far as what evidence the jury viewed. And what about the fact that the defendant had at least an arguably incredible – made some incredible statements to the police officer when pulled over, when he couldn't answer questions like, what's the name of the person who lent you the car, or when are you supposed to return it? Isn't that evidence that the state could say corroborates the presumption? No, Your Honor. If you're asking if the jury's finding that Jacobs didn't testify credibly could corroborate – No, not his testimony at trial. I'm sorry. The evidence the state put in of statements he made to police officers, both at the roadside and at the station house. Okay. Well, in that case, we have – the statements he actually made do not show guilty knowledge at all. And the state's use – this would be getting into a separate issue about the evidence that came in – the state's use of the silence in Mr. Jacobs' non-answers was completely improper. And the silence should not have been used against him in – Your Honor's ordered supplemental briefing on Salinas v. Texas. And under that case – Let me stop you. We can certainly talk about that if you like. But putting that – the admissibility of it aside for the moment and just talking about the evidence that was admitted at trial. Yes. He was told at the police station he was asked when he was supposed to return the car and he didn't have an answer. He did not say anything in response to that question. Right. Right. And when he was asked at the roadside, he made some statements, even some statements that you don't challenge. He was asked, what was the name of this friend? And he said, I don't know. That's correct. That wasn't silence. That was an affirmative answer he gave. That's correct. It's the same answer the defendant gave in Gordon. So this case is completely on all fours with Gordon in the sense of any statement that came in was identical. The condition of the car was identical. The defendant then came back with a lot of evidence to rebut the presumption. I'm talking right now about the – you're saying that there's no evidence to corroborate the presumption. That's correct. And if we were agreed with you that there did need to be such evidence, wouldn't it be some of these statements that he made to the police where he couldn't give basic information like the name of the person who rented him the car? Well, he did tell the officer that he rented it from a friend who he later explained was he paid $40 for this car from a friend. He'd only known this guy for a month and a half, so I don't think it's a stretch to think that he didn't, you know, might not have remembered his name. In particular in a situation where he's pulled over by at least three officers and is suddenly in a pretty intense situation, he could have just been nervous and not remembered the name. The fact that he said he didn't know the name doesn't show guilty knowledge at all. But what about the later statements where he said he rented it for 40 days to go from Peoria to Chicago and back. It's a day trip. I mean, is that something that the jury could consider when they first heard the first statement that he didn't know who he got it from? Then he said he got it from a hype, $40, and then at trial he said something a little different. He actually came up with the name of the fellow, didn't he? Yes, Your Honor, those statements weren't inconsistent, though. I mean, he told the officers that he rented it from a friend. He didn't say he was unable to explain where he got the car. This is no different than renting an Uber car and not knowing if the Uber driver has stolen the car. If the car is in good condition, there's no reason to assume it had been stolen. There's nothing that would indicate that Mr. Jacobs knew this car was stolen. The fact that he said I don't know the friend's name doesn't show that. And then when he elaborated on that at the station, he's giving the officers the actual explanation of how he got the car. And the state doesn't actually even argue, I don't believe, that those statements show guilty knowledge, and I believe would be unable to. There's just simply no link between not knowing the person's name in a custodial traffic stop and knowing the car was stolen. This is an acquaintance of a friend of his that he knows through his cousin. So he had the keys. There's just no reason, nothing the state points to other than his silence. And as we can discuss also later, if you're interested, the other piece of evidence the state points to is that it basically linked him to this burglary that we know was committed by Ryan Land. The jury did not know this. The state knew. The defense knew. The judge knew. The jury didn't. And as far as the car- Can they find out the later? The jurors? Yeah. Who was responsible for the burglary? No, Your Honor. The defense was precluded from introducing police officer testimony, you know, reliable witness who could say, this is the person arrested for stealing the car, for stealing the jewelry, for showing up at Pond King. Did the jury find out, though, that he was not charged with the burglary? They found out he wasn't charged or investigated, which was prejudicial to Mr. Jacobs, because in the absence of evidence showing that we know who the thief is, we know who did this, the jury would likely believe he got off easy. That's one of your other major complaints, isn't it, that this other sort of side trial was going on, the burglary suggestion that he committed the burglary when he was really only on trial for possession of his own motor vehicle? Absolutely, Your Honor. That's a very important part of the case. The defense was unable to present critical evidence throughout trial, and particularly the way the state used the evidence of the jewelry being stolen and Pond King, which initially the trial court barred recognizing it would be prejudicial. The defense had to be able to rebut that somehow. Is that one of your arguments, that because the judge let in this information about the burglary and the Pond King, that the defense should have been entitled to some way to rebut all this sort of side trial thing that was going on? Well, yes. Yes, that's a big part of the argument. The jury didn't have all the facts it needed to know here to make a reliable, you know, to know if it could even make a reliable inference of guilty knowledge. The state explicitly linked Mr. Jacobs to the burglary repeatedly in closing arguments, and the jewelry and Pond King. I mean, the state had just argued that he was at Pond King without this argument regarding jewelry and being seen walking out of a Pond shop. But we actually know Brian Lamb pawned this jewelry, so the jury didn't know that. And they're led to believe he's pawning this jewelry right after the burglary. He must have been the person that stole the car. So they're likely to make an inference based on the fact they thought he was the thief, but we know he wasn't. Was it improper for the judge to let in sort of some information about the stolen motor vehicle? I mean, to explain anything? Some information is relevant. Where it becomes prejudicial is when the state elicited testimony from Jason Fox about the stolen jewelry. And the reason is because if the judge let in Jason Fox's pretty sketchy identification, supposedly seeing Mr. Jacobs at Pond King, had he just said, I saw him outside of Pond King, Pond King has no meaning. You can't pawn a car at a Pond shop. So by introducing right in opening statements, right off the bat, even though the judge told them they couldn't do it, they start to plant the seed about missing jewelry. And then in closing arguments, they repeatedly link Jacobs to the jewelry and Pond King. It's a very clear insinuation that Mr. Jacobs was involved in the burglary, but we know he wasn't. And we know he didn't steal the car, and we know he didn't pawn the jewelry. But didn't the jury know that too? The jury absolutely did not know that. Well, they knew that he was not charged or even suspected of the burglary. Right, and that's a problem for Mr. Jacobs, because they don't have the complete story. So if they're hearing a lot of evidence and argument suggesting he's involved in the burglary, and then evidence suggesting or indicating he was never even looked into as a suspect, they're going to think this guy got off easy for his burglary. Well, that was evidence the defense put in. That he was... The officer who testified, he did not investigate or arrest the defendant. Right. He was trying to mitigate the damage caused by the court's ruling that wouldn't let the defense put in the whole story. Okay. And this happened throughout trial. Even regarding his silence, the defense wanted to introduce evidence that Mr. Jacobs tried to call Brian Lamb from the police station, and he wasn't allowed. I mean, he could have been trying to get the guy's name to give to police. But, again, the defense wasn't allowed to put on that side of the case. It wasn't allowed to tell the jury why Mr. Jacobs was going to Chicago. They were really in the dark here, and the state just took this, which should have been a criminal trespass to vehicle, and turned it into a burglary trial. It's the special version that we closed. What about that criminal trespass to vehicle? He asked for it. It was denied. Do you believe that criminal trespass to a vehicle is the lesser included? Yes, Your Honor. Well, it's all the same elements minus guilty knowledge. All right. So what is the test, then? Let's assume for purposes of argument that the criminal trespass to a vehicle is the lesser included. He should have been given that instruction. But there's one more part of it, isn't there? Whether or not the court – if the court determines it's the lesser included, it still has to do another sort of study, doesn't it? Whether there's some evidence of the lesser included. Well, not just some evidence, though. We're going to look at this now as to whether the court abused his discretion. Okay. The second part of the test, the way I understand it, is that if the only way you really get that is if – is it Colton? That if the – I don't know – if the jury could only – if they can find him guilty of criminal trespass, then they have to be able to put him on the grader. Isn't that how it goes, the test? Well, I believe – I mean, we're on a – the state cited people in Washington, I believe, in their brief, which is basically a case where the court seems to help us – found that basically in the same situation where you have an offense with one less element, it's a lesser included offense, and if requested by the defense, it should have been given. The Holmes error analysis, though, in Washington, I believe, was wrong. But what is the actual – The question is whether there's a reasonable probability of a different outcome. And when the evidence shows that – and that's under People v. Harris, an Illinois Supreme Court case that I cited. The site is 206, Illinois, 2B, 293. We're not looking at a sufficiency of the evidence in whether the instruction should have been given, but whether there's a reasonable probability of a different outcome. I don't think that's the test, Mr. Rand. Well, no, no, no. The Illinois Supreme Court's opinion in People v. Harris sets the test that was discussed in that case. All right. Well, I think in any event, you believe that the instruction should have been given. If there's some evidence, it should be given. It doesn't really hinge on the testimony of the prosecution's case or the defense case. The question is really could the jury have pulled something out of there, if there's some evidence that would have suggested it was a criminal trespass vehicle, correct? Right. And in this case, he was in possession of a vehicle we know he did not have permission from the owner to drive. So that's criminal trespass to vehicle. In fact, the woman arrested with him at the time was charged with criminal trespass to vehicle. She wasn't driving. She was the passenger. She wasn't driving, right. A driver driving alone doesn't infer guilty knowledge. So, I mean, the defense should have had an opportunity to let the jury enter a conviction on the crime that was actually committed, which was criminal trespass to vehicle. I think we are hitting our limit here. Do you want to save a few minutes for rebuttal? Yes, please, Your Honor. Okay. If there are no further questions, then I would ask that you reverse this conviction or remand for a new trial. Thank you. Thank you very much. Mr. Nowak. May it please the Court. Again, my name is John Nowak on behalf of the people. Your Honor, this defendant received a fair trial, and the evidence proved beyond a reasonable doubt that he was guilty of possessing a stolen motor vehicle. As to the first issue defendant raises here, when the evidence is viewed in the light most favorable to people, a rational trier of fact like this jury could have found beyond a reasonable doubt that this defendant knew this vehicle was stolen. Now, that statutory inference that has been discussed this morning, it's buttressed by the evidence at trial, including the timeline here and defendant's evasive changing story that he gives to the police after he is stopped. This car was stolen on January 14th. Five days later, on January 19th, Jason Fox, the victim's son, sees the defendant driving his father's car in Peoria, and sees that defendant speed away when he's there at the pawn shop. Next day, defendant is stopped by the police in Chicago, and he's driving that same stolen vehicle. That gets into defendant's changing story. When the officer first stops the defendant on the road... Well, let's go back to the pawn shop. You know, I'm confused about the explanation about why it was necessary to start talking about the jury burglary and giving the manager from the witness about where he saw the car. Wouldn't it have been just necessary, I was at a shopping center, I was outside, even simply a pawn shop, and I saw the defendant? Going further, not only did it violate the motion to eliminate, it created an inference that somehow he was involved with the stolen jury. It didn't create that inference, Your Honor, with respect to... I got it, it's a pawn shop. It is a pawn shop. That's what people do at pawn shops, they don't pawn cars like I think Mr. Rainer said. That's true, Your Honor. They pawn other little items, like jewelry. You're talking about the testimony, I'm there looking for the jury, and here's the defendant. It explains, it all went to why Jason Fox was at the location. Why is that relevant? It explains how he is at a location where he actually sees the defendant in Peoria with his father's car. The car is in Peoria, he's in Peoria, why is that an allusion? Why did he say I was at the laundromat? Well, he wasn't at the laundromat, he wanted to lay a foundation for this case. Where did you see him? It's a reasonable basis for why, where did you see him? I saw him here at this place. What did the court rule originally? What was the ruling? There was a motion in limine to keep this out, wasn't there? There was, there was. And the trial court was ambiguous about it. And ultimately, once it came in, the trial court ultimately, and again, this is the record, I-7, I-9. Ultimately, the trial court found that it was proper for that to come in. Again, because this all went to the narrative to explain why Jason Fox is there, why he sees... Didn't the trial court make a different statement saying why it was relevant? It kind of showed that it was stolen, that he stole it? I know, it's... The trial court wasn't clear exactly why, but it does, it ultimately went to the narrative to show why Jason Fox was there. And Jason Fox was there... Would this whole thing have been tried without that little burglary thing going on on the side? Your Honor, really, it wasn't... The guy had a burglary conviction, right? Yes. That came in when he testified. Because he testified... But couldn't this whole thing have been tried more clean, so to speak? Keep out the jewelry, keep out the actual location of the pawn shop. You still get your identification. You know, you put him in the car a few days earlier. I'm not sure how much, you know, that does. But it does help, and then you don't have all this stuff about the burglary, and then the defendant wants to rebut all this by saying he was never charged, he wasn't arrested, you know. Well, you can certainly see that in retrospect, but the issue here is, was it an abuse of discretion for the trial court to make that ruling? Is this something that no rational judge would do? And the answer is no. This was not an abuse of discretion here, Your Honor. And part of the reason for... We can say his initial ruling was. But once he heard the evidence in it... Well, he knew what the evidence was before he ruled, he just... And again, part of this continuing narrative to explain why Jason Fox is there, it also goes to explain to why the vehicle itself doesn't show any damage. The reason why is because the key was stolen during the burglary. And... Well, the information is... The defendant stole the key. But again, it also came into trial by defendant's own witness from Detective Schweigert that this defendant was not charged, wasn't investigated for that burglary. But Mr. Raines says that really hurts him because he wasn't charged, he got away with that thing. That's a stretch, to put it mildly, Your Honor. That is... Well, I think that... It was defendant's witness to put Detective Schweigert in. Because he wanted to rebut all this stuff about the burglary. That came up after all the burglary sort of... And the testimony from Detective Schweigert that the defendant wasn't charged with this or investigated for it even, again, goes to show, and defense counsel made hay of this in closing, that defendant had nothing to do with this burglary. And that's fine because defendant wasn't on trial for the burglary. He's not on trial for stealing the car. The argument here, isn't it, that he was really on trial for two things at the same time and that prejudiced him greatly? It didn't, Your Honor. Because when we look at the evidence here, you can show that, again, the timeline here and his ever-changing story, getting back to that, getting back to the evidence that actually shows that he knew that this vehicle was stolen. When he stopped initially on January 20th, he... Officer says, who's car is this? And defendant says, it's a friend's. He's like, well, what's your friend's name? And defendant responds, I don't know. And that's the problem with the case. And I understand what you're saying. But a preface before we even get to that, his explanation, is the testimony that he's outside a pawn shop where this witness is looking for a stolen jewelry. And you see the defendant coming out. And that's the problem. Because we're looking at his credibility. And that's the problem that I see here. That's where defendant put himself at that pawn shop, Your Honor. I mean, that's where Jason Fox saw him. I mean, that's what else is true. But then the judge ultimately, the judge was ambiguous about that ruling. But then ultimately, again, the I-799 says, no, that's fine. It can come in. And it was proper. And, again, it's just showing that's where Jason sees defendant. But that's not the only evidence here that this defendant knew it was stolen. It just shows that Jason saw him in Peoria with his father's car. What really brings this home. That certainly shows, perhaps, that his testimony and the statements were not consistent. Because he basically was saying, oh, I just had it for the state. Whereas the evidence the state put in showed he had it even earlier. Right. Because he said it. But that doesn't suggest or mandate, rather, that the jewelry come in, that the location of it being a pawn shop come in in light of the judge's earlier ruling that he thought, you know, let's keep this clean. We're not going to do the jewelry. We're not going to have the burglary side trapped. Let me ask you about this criminal trespass to a vehicle. I'm not sure what you're saying in your brief. Is it a lesser included or is it not? It's arguably, we took the position that even assuming that it is a lesser included offense, that ultimately the trial court was correct and did not abuse its discretion and not give an instruction. And what's the basis for that? Because there is, based on the evidence that came in the trial, the evidence would not have allowed the jury to acquit this defendant of possessing a stolen motor vehicle while convicting him of the criminal trespass. Why not? Well, we know based on the evidence that this jury found beyond a reasonable doubt that this defendant knew that vehicle was stolen. So we know that even if given that instruction, they would not have found him, they would not have suddenly acquitted him of the possession of the stolen motor vehicle. They were properly instructed as to that, and they found that element proven beyond a reasonable doubt. Well, I'm not sure I understand the logic here about that because they found him guilty of possession, that they couldn't have exercised some sort of lenity and found him guilty of criminal trespass. And criminal trespass just requires what? That he's without authority? He's entering a vehicle? Correct, Your Honor. The trial court would not have instructed the jury that they could be lenient and decide that even if they found him, they could have done that. I'm not saying that, but I don't, I'm not sure I understand the, your argument about that they couldn't find him guilty of the lesser-included offense because they, in this case, found him guilty of the possession. Well, because we are. You say that in every case, and therefore, you don't get, you never get a lesser-included offense. Based on this record, Your Honors, and based on, again, the evidence that came in, the timeline, defendants changing answers, the trial court did not abuse its discretion in not giving that instruction. And we know that if it had given it, the jury would have found him guilty of the greater anyway because they did do that when instructed on that offense. And again, here, to get back to the statements that he's making, so he gives that statement. He says, oh, look, it was a friend, doesn't know his friend's name. Then, after he's arrested and Mirandized, he agrees to speak to the officer again, and now he says, actually, I got it from a hype for $40. Doesn't know the hype's name. Has no other details. Can't give him any other things. And then, so that's showing that the defendant, by changing the story, doesn't know. He knows the vehicle was stolen, Your Honors. He knows it. And it buttresses that statutory inference that's in the PSMV statute. Why would the jury's prerogative go to believe the defendant if it's so true? Yes, of course, Your Honor. Okay. Of course. It's not a presumption. It's an inference. And it's one that the statute, and it's a permissive inference at that. The jury was free to disregard it. But, because of all this evidence, defendant is seen in the vehicle, he's possessing it, he gives this changing story, I don't know who my friend gave it to me, I don't know who it is, and then changes it to a hype, and then a trial. He's got many more details, and suddenly, several months earlier, when he was actually arrested, didn't have, but given time, suddenly his memory's better. But to get to the Gordon case, this court discussed with defense counsel in his opening argument, it's easily distinguishable. The defendant in Gordon was driving this vehicle. In the passenger seat next to him was the owner's friend. And the owner's trial testified, I often let my friend drive this car with my permission. If I had known he was a passenger in the car, I would not have reported it stolen. Here, defendant was driving the car. The owner's friend, James Fox's friend, was not in the passenger seat. James Fox didn't say, if I had known the passenger was in that car, I wouldn't have reported it stolen. No. This is a passenger. So this defendant was in possession of a stolen motor vehicle. He had it, he knew it, he gave changing answers about why he had it and how he had it, because he knew it was stolen, Your Honors. Now, again, as to getting back to another point defendant raised, and it gets into this burglary of the home, the trial court didn't abuse its discretion in not allowing evidence about Brian Lamb or whoever burglarized that home. Testimony that Lamb committed the burglary and admitted to stealing that vehicle wouldn't show that someone other than defendant possessed the stolen motor vehicle. Defendant wasn't on trial for stealing the vehicle. Maybe then the Brian Lamb testimony would come in. But there's no question this defendant was the driver, and putting it in has nothing to do with whether defendant knew this vehicle was stolen. And again, defendant, the jury heard in defendant's case that Detective Schweiger testified that this defendant was not even charged or investigated for the burglary. So ultimately, Your Honors, as to the sufficiency of evidence, when it's viewed in the late most favorable to the people, a rational trier of fact could have found that he knew, based on his changing stories and his timeline, that he knew that vehicle was stolen. And he had a fair trial here, given everything that came in. For these reasons, those in our briefs, Your Honor, we ask that this court affirm defendant's conviction. Thank you, Mr. Nowak. Mr. Raynott, rebuttal. Mr. Raynott, do you think the judge equivocated when he first denied the motion, or he granted the motion in limine to keep out the jewelry? Well, I want to be clear what happened with this ruling, because the judge never gave the state permission to do what it did.  He didn't use any evidence of the keys or anything else that was stolen other than the car. Excuse me. It precluded the state from using the jewelry or anything else. So he said that. Yes. And more importantly, the judge said he precluded the state from making any insinuation that Jacobs was involved in the burglary. So even if the judge changed his mind by overruling counsel's objections to the admissibility of evidence about the jewelry, the judge never gave the state permission to take that evidence and turn the case into a burglary trial. The state had been barred prior to trial, and the judge never changed his mind about that. The state was not permitted to try to infer Jacobs was involved in the burglary, and they repeatedly used evidence of the keys, excuse me, the jewelry, and the pawn shop to specifically link him to the burglary in closing arguments. A substantial portion of both parties' arguments were about whether Jacobs committed the burglary. This wasn't a burglary trial. Right. And the jewelry, what did the judge say? He said, well, it's okay now? He just overruled counsel's objections. Initially, the judge barred the state from introducing that evidence. The state, right off the bat in opening statements, started talking about the jewelry anyway. They called their second witness, Jason Fox, and started hammering out questions to him about the jewelry, and counsel objected, and the objections were just overruled. There wasn't really an explanation for it, but there was no reversal of the ruling that the state can't use that evidence to connect Jacobs to the burglary. And actually, the state says that they didn't make that inference. I discussed some of the portions of the record that show that they did. I cited some of the briefs. But the state, in its own brief, admits that that was the use of the testimony about the jewelry. The state, on page 37, says what the prosecutor actually said was the defendant knew the car was stolen because only days after the burglary, he possessed the vehicle, and the victim's son saw the defendant in the vehicle at the pawn shop. The state is admitting they used this testimony about the pawn shop and the jewelry to show he had guilty knowledge. The only way you can get guilty knowledge based on this fact is if you're involved in the burglary. The jury did not know that Brian Lamb stole this car. And the defense had a constitutional right to put on its defense. It's a constitutional violation that the state used Jacobs' silence against him. So the state's burglary showed that these errors were harmless beyond a reasonable doubt, and they've offered no explanation as to why, other than the prosecutor's opinion at trial and counsel's opinion now that he knew that this car was stolen. There's no fact that shows guilty knowledge, and there's no fact that shows these errors were harmless. The state admits to the reason why they used this, and we've seen the result. It resulted in the conviction. And the state's argument regarding the jury instruction doesn't make any sense on the facts of this case because in finding Jacobs guilty of the greater offense, the jury necessarily relied on improper evidence, invalid evidence of Jacobs' silence, and that he was involved in the burglary. On the criminal trespass, lesser included argument. Yes, sir. Do you agree that the defendant has to know he is entering the vehicle without authority? Is it a requirement of the statute that the defendant knows that what he is doing is without authority? For criminal trespass or just to be clear, possession of a motor vehicle? Criminal trespass. You're lesser included argument. Right. That he is a minor. I think what the statute says is he has to do so knowingly, without authority. Has to enter the vehicle without authority? It is right. That he knowingly entered the vehicle without authority. Right. Okay. So at trial, you're... No, excuse me, knowingly entered the vehicle and that he had no authority. We know that he didn't have authority from the owner and that he knowingly entered the vehicle. Does he have to know that he didn't have authority? No, because that makes the crime possession of a stolen motor vehicle. That's guilty knowledge. That's the element that's not required for criminal trespass to a vehicle. What he has to know is that he knowingly entered this vehicle and the evidence established he didn't have authority from the actual owner. So he would need to get that authority from Brian Lamb. Thank you. If there are no further questions, Your Honors, thank you very much. And I ask you to reverse Mr. Jacobs' conviction or rename from the trial. Thank you. Thank you, Mr. Reyna. Thank you, Mr. Nowak. Very interesting case. It was well briefed and well argued, and we will take it under advisement.